Fanny Goldsmith & others, trustees, *vs.* Louis A. Barron & others.

Suffolk.     January 8, 1934. — October 24, 1934.

Present: Rugg, C.J., Pierce, Field, & Lummus, JJ.

*Joint Tenants and Tenants in Common.  Landlord and Tenant,* Surrender. *Frauds, Statute of.  Partnership.  Agency,* Scope of authority.

Where a lease of real estate was assigned to three persons, and the land thereafter was occupied by a corporation which the assignees, together with a fourth person, formed and whose entire capital stock was owned by the four, the three assignees held title to the leasehold estate as tenants in common under G. L. (Ter. Ed.) c. 184, § 7.

If the lessor and the assignees above mentioned made an oral agreement

. that the lease should be surrendered, the agreement was within the
   statute of frauds, G. L. (Ter. Ed.) c. 183, § 3.

Assuming that a memorandum of such agreement, which was signed by
   the attorney for the assignees without specific authority from one of
   them, was authorized by the other two and was sufficient in form,
   the memorandum was not binding on the assignee who had given no
   specific authority on the theory that he was a partner with the other
   two in the business carried on by the corporation or that he other-
   wise had a partnership interest in the leased premises; and the statute
   of frauds, which was pleaded by the defendants in a suit in equity by
   the lessor against the assignees to enforce such agreement, was a
   sufficient ground for dismissal of the bill.

BILL IN EQUITY, filed in the Superior Court on July 19,
1933.

The suit was referred to a master. Material findings by
him are stated in the opinion. By order of *Donahue*, J.,
there were entered an interlocutory decree confirming the
master's report as modified in one particular, and a final
decree dismissing the bill. The plaintiffs appealed from
each decree.

*R. Clayton*, for the plaintiffs.

*A. S. Allen*, for the defendants.

PIERCE, J. This is a bill in equity to enforce a contract,
alleged to have been made by and between the plaintiffs
and the defendants Barron, Craft and Gabovitch (who will
hereinafter be referred to as the defendants) to surrender
for cancellation a lease of real estate located at the corner
of Washington and Ruggles streets, Roxbury. The lease
is alleged to have been deposited with the defendant Mr.
Kaplan, with authority to surrender it in accordance with
the terms of said alleged agreement. The defendants were
allowed to amend their answer by setting up the statute of
frauds. The case was referred to a master who duly filed
his report. This report, except for a slight modification of
the last paragraph, was confirmed by an interlocutory
decree, and thereupon a final decree was entered dismissing
the bill. The case is here on the appeals of the plaintiffs
from the interlocutory and final decrees.

The material facts found by the master are in substance
as follows: The plaintiffs, as trustees, are the owners of the
premises above referred to. The defendants on December

28, 1932, took an assignment from one Bernard Stroum of a lease of said premises. Stroum held a leasehold title in the premises thus assigned through mesne conveyances from the original lessee, one Dutton. The lease was granted in 1916 for a term of twenty years at a rental of $20,000 a year. Before December 28, 1932, a corporation was formed by the defendants and the defendant Mr. Kaplan, and the entire capital stock was owned by them. This corporation occupied the store on the leased premises until July 31, 1933, and the defendants at the time of the trial were in possession of the premises. On the above facts the master rightly found that the defendants held title to the leasehold estate as tenants in common. G. L. (Ter. Ed.) c. 184, § 7.

In May, 1933, the defendants Craft, Barron, and Mr. Kaplan called upon an attorney at law, one Stoneman, who represented the plaintiffs, and told him they would be unable to continue in business unless they could secure a reduction of the rent, and if they could not secure a reduction in rent they would have to vacate the premises. Mr. Stoneman refused to make any reduction in rent or any change in their lease until they surrendered their lease. The said defendants were unwilling to surrender their lease and the conference did not result in any new arrangement. On June 2, 1933, the defendants Craft and Barron, at a conference with Mr. Kaplan, who was their attorney, agreed to vacate the premises on June 30, 1933, and instructed Mr. Kaplan to notify Mr. Stoneman of this agreement. Mr. Kaplan delivered the message but the instructions were withdrawn on June 10, 1933, before acceptance by the plaintiffs, because the defendants and the plaintiffs could not agree on an adjustment in purchasing fixtures owned by the defendants as members of the corporation. On July 5, 1933, the plaintiffs Rees met the defendants at the corporation's store and there had a conference relative to rental adjustments and alterations. Rees refused to give any reduction in rent to the defendants or to make any alterations in the lease. He stated that he could get more rent for the premises. To this Craft replied: "If you can

get more money as you say you can, you had better enter
into negotiations with them at once and we will get out."
Craft also said in substance that if the rent was not re-
duced from $20,000 to $15,000 "they would surrender lease
on July 31." To this Rees replied that "he would confer
with counsel and let them know his answer tomorrow."
On July 6, 1933, Rees informed the defendants that "he
would consider surrender of lease on July 31st and pay-
ment of $200 for the oil burner." On July 6, after this
second conference between the plaintiffs Rees and the de-
fendant Craft, Mr. Kaplan received a telephone call from
Craft saying they "had decided to vacate on July 31 and
surrender the lease and to get in touch with Mr. Stoneman
and so advise him and arrange for a credit of $200 for the
oil burner. . . . Get David Stoneman at once and put
through arrangements." Mr. Kaplan then called up Bar-
ron, reported the conversation with Craft, and Barron con-
firmed it. He did not advise with Gabovitch, and the
master finds "that Gabovitch at no time specifically in-
structed Mr. Kaplan, in so many words, to surrender the
premises on his behalf, either verbally or in writing."

Pursuant to the direction of Craft and Barron and on the
assumption that he had the authority of Gabovitch, on the
theory that the defendants were partners, Mr. Kaplan, on
July 7, 1933, telephoned Mr. Stoneman as follows: "My
people will surrender the lease on July 31st and vacate, and
you are to pay them $200 for the oil burner." Mr. Stone-
man asked Mr. Kaplan to prepare the necessary papers
which, the master finds, he was supposed to do. Later, on
several occasions, Mr. Stoneman inquired whether Mr. Kap-
lan had prepared the necessary papers. Mr. Kaplan replied
that he had not but his clients were getting out on July 31.
Mr. Stoneman during the conversation asked Mr. Kaplan
to send him a letter of confirmation. This Mr. Kaplan did
on July 11. The body of the letter reads as follows: "Con-
firming telephone conversation would advise that my
clients will vacate the premises occupied by them at 2201
Washington Street, Roxbury, Mass., known as Dutton's
Roxbury Store, July 31, 1933. I will draw the papers

agreed upon, that is, an assignment of the lease by my clients to your client, who is the owner of the property and the release by your client of all claims and demands against my clients. My clients are to receive an allowance of $200 on this month's rent for the transfer of their interest in the oil burner located in the building. In view of the fact that no adjustment can be made by our clients in the matter of the fixtures our clients are removing whatever fixtures belong to them when they move out." Other than may be inferred from the conversation between Mr. Stoneman and Mr. Kaplan there is no evidence in the master's report to show that the plaintiffs, by any communication with the defendants, formally or informally referred to the declaration of Mr. Kaplan that the defendants intended to surrender the lease on July 31, 1933, and there is no evidence there that the plaintiffs agreed to accept the defendants' relinquishment of their interest in the lease and discharge them from the covenant there contained.

If it be assumed that Rees had authority to act for the plaintiffs and that his statement, after consultation with counsel, that "he would consider surrender of lease on July 31st and payment of $200 for the oil burner" was a counter offer which was accepted by Craft and Barron, the alleged accepted agreement was within the statute of frauds, G. L. (Ter. Ed.) c. 183, § 3, which provides as follows: "An estate or interest in land created without an instrument in writing signed by the grantor or by his attorney shall have the force and effect of an estate at will only, and no estate or interest in land shall be assigned, granted or surrendered unless by such writing or by operation of law."

Assuming, without decision, that the letter of July 11, 1933, was authorized by Craft and Barron and that it is sufficient in form as a memorandum to satisfy the statute of frauds, Mr. Kaplan had no authority to execute the memorandum in behalf of Gabovitch on the theory that he was a partner with Craft and Barron in the business carried on by the corporation, or that he otherwise had a partnership interest in the premises leased, and the other copartners or

coöwners could not bind Gabovitch in a contract for the surrender of their common interest in the real estate described in the lease. *Merrill* v. *Berkshire,* 11 Pick. 269, 274. *Dillon* v. *Brown,* 11 Gray, 179, 180.

It follows that the entry of the final decree was warranted in law either on the ground that there was no acceptance of the defendants' offer or on the ground that if the plaintiffs were the offerers and the offer was accepted by two of the defendants there was no memorandum which satisfied the statute of frauds. G. L. (Ter. Ed.) c. 183, § 3.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs.*